Below is an opinion of the court.

*David W. Hercher*
_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>**Steven Alan Stein** and **Terra Lyn Stein**,<br><br>Debtors. | Case No. 09-65587-dwh13 |
| **Terra Lyn Stein**,<br><br>Plaintiff,<br><br>v.<br><br>**National Collegiate Student Loan Trust 2006-2**, a Delaware statutory trust, **and National Collegiate Student Loan Trust 2007-3**, a Delaware statutory trust,<br><br>Defendants. | Adversary Proceeding<br>No. 22-06012-dwh<br><br>**MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT**[1] |

---

[1] This disposition is specific to this action. It may be cited for whatever persuasive value it may have.

Page 1 – MEMORANDUM DECISION ON MOTIONS FOR SUMMARY etc.

## I.  Introduction

Terra Lyn Stein, a chapter 13 debtor, completed her plan and received a discharge in 2014. This year, she brought this action against two student-loan creditors, and in the main case she has moved that they be held in contempt.[2] Both this action and the contempt motion pertain to prebankruptcy loans that the creditors have attempted to collect since she received her discharge. She argues that the loans have been discharged and that the creditors' postpetition collection efforts are discharge violations. They argue that the loans were automatically excepted from discharge under 11 U.S.C. § 523(a)(8)(A)(i), so the postpetition collection efforts are lawful. She disputes their claim under section 523(a)(8)(A)(i) and separately argues that the loans are dischargeable under 523(a)(8)(B).

Neither Stein, on one hand, or the creditors, on the other, have demonstrated the absence of a genuine dispute of material fact and that they are entitled to judgment as a matter of law. I will deny both motions.

## II.  Undisputed facts

### A.  *Facts alleged by creditors*

The following facts are asserted by the creditors and accepted by Stein.

---

[2] No. 09-65587 ECF No. 65.

### 1. Paragraphs 1 through 20 of creditors' concise statement of material facts

On March 15, 2006, Stein took out loan 1, a student loan for $14,000 from Charter One Bank, N.A., the predecessor in interest of National Collegiate Student Loan Trust 2006-2, in connection with her attendance at Chemeketa Community College (CCC) in Salem, Oregon.[3]

On July 18, 2007, while attending Western Oregon University (WOU), Stein took out loan 2, a loan for $25,000 from Bank of America, N.A., the predecessor in interest of National Collegiate Student Loan Trust 2007-3.[4]

Both loans were obtained for an educational purpose.[5] On the Note Disclosure Statements for both loans, she is identified as "Student."[6]

The credit agreements for both loans specifically identify the loans as educational loans. The loan 1 agreement identifies the loan as a "CFS Private Education Undergraduate Loan," and it states that the loan was made for the "Academic Period: 04/2006–06/2006" for Stein to attend CCC. The loan 2 agreement identifies the loan as an "Education Maximizer Undergraduate Loan," and it states that the loan is made for the "Academic Period: 07/2007–05/2008" for her to attend WOU.[7]

---

[3] ECF No. 22 at 2 ¶ 1; ECF No. 31 at 1 ¶ 1.
[4] ECF No. 22 at 2 ¶ 3; ECF No. 31 at 2 ¶ 3.
[5] ECF No. 22 at 4 ¶ 18; ECF No. 31 at 3 ¶ 18.
[6] ECF No. 22 at 4 ¶ 20; ECF No. 31 at 3 ¶ 20.
[7] ECF No. 22 at 4 ¶ 19; ECF No. 31 at 3 ¶ 19.

After the bankruptcy case closed, the creditors sued Stein in Marion County, Oregon, Circuit Court to collect the remaining balance of the loans in two separate collection actions.[8] The creditors each incurred a court cost. The creditors obtained judgments in January 2016.[10]

### 2. Paragraph 21 of creditors' statement

In part III.C.1 below, I address paragraph 21 of the creditors' concise statement of material facts.

### 3. Paragraphs 22 through 24 of creditors' statement

The Articles of Organization of The Educational Resources Institute, Inc. (TERI), state that it, as a nonprofit, was organized under the Massachusetts nonprofit statute to be "operated exclusively for charitable and educational purposes."[11] TERI is described as a nonprofit institution on the Secretary of the Commonwealth of Massachusetts's website.[12]

### B. *Facts alleged by Stein*

The following facts are asserted by the Stein and accepted by the creditors.

The petition date was October 15, 2009.[13]

Stein completed her chapter 13 plan and received her discharge on October 28, 2014.[14]

---

[8] ECF No. 22 at 2 ¶ 8; ECF No. 31 at 2 ¶ 8.
[10] ECF No. 22 at 3 ¶¶ 9–10.
[11] ECF No. 22 at 5 ¶ 23; ECF No. 31 at 3 ¶ 23.
[12] ECF No. 22 at 6 ¶ 24; ECF No. 31 at 3 ¶ 18.
[13] ECF No. 17 at 2 ¶ 10; ECF No. 27 at 3 ¶ 10.
[14] ECF No. 17 at 3 ¶ 13; ECF No. 27 at 4 ¶ 13.

## III. Analysis

This decision addresses four summary-judgment motions, one filed by each of Stein[15] and the creditors[16] in this action and in the main case. Due to the overlap of issues in this action and the main case, there are essentially just two motions to consider. I will refer only to papers the parties have filed in this action, which are essentially identical to those filed in the main case. References to papers filed in the main case will include the main case's number, 09-66587, as well as the paper's ECF number; references to papers filed in this action will include just the ECF number. I will file this decision in the main case, as well as in this action.

Although Stein's motion was filed first, the creditors have the burden of proving nondischargeability, and her summary-judgment task is essentially to prove a negative—that the loans do not fall into any of the categories of nondischargeable debts. It thus makes sense to turn first to the creditors' arguments and focus on their asserted bases for nondischargeability.

The creditors argue that Stein is barred by laches from contending that the loans are nondischargeable and, alternatively, that the loans are nondischargeable under 523(a)(8)(A)(i). She contests the creditors' positions and argues that the loans are dischargeable under 523(a)(8)(B).

---

[15] ECF No. 16; No. 09-65587 ECF No. 78.
[16] ECF No. 19; No. 09-65587 ECF No. 83.

### A. Laches

#### 1. Availability of laches in a creditor's nondischargeability action

The Ninth Circuit Court of Appeals' 2002 decision in *Beaty v. Selinger (In re Beaty)* addressed the role of laches in a creditor's action seeking determination that the creditor's claim was nondischargeable under 523(a)(3)(B). Generally, a creditor's action to determine the dischargeability of a claim described in 523(a)(2), (4), or (6) must be brought within 60 days after the first date set for the meeting of creditors.[17] But if the debtor fails to schedule the creditor's claim and address in time to permit the creditor to timely file a proof of claim and bring a dischargeability action, 523(a)(3)(B) and Federal Rule of Bankruptcy Procedure 4007(b) permit the creditor to bring the action "at any time."[18] In *Beaty*, the creditor was covered by 523(a)(3)(B), but he waited five years after learning of the discharge to bring his nondischargeability action in bankruptcy court. The debtor raised laches as a bar to the action.

The court began by acknowledging that, as a general principle, laches is available upon "proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense."[19] The court then recognized the "presumption that the equitable doctrine of

---

[17] 11 U.S.C. § 523(c)(1); Fed. R. Bankr. P. 4007(c).
[18] Fed. R. Bankr. P. 4007(b).
[19] *Beaty*, 306 F.3d at 926, quoting Kansas v. Colorado, 514 U.S. 673, 687 (1995).

laches, which has as its goal the prevention of prejudicial delay in the bringing of a proceeding, is a relevant and necessary doctrine in the bankruptcy context."[20]

The court read 523(a)(3)(B) and Rule 4007(b) "as directing bankruptcy courts to be especially solicitous to a § 523(a)(2)(B) claimant when laches is invoked, and refuse to bar an action without a particularized showing of demonstrable prejudicial delay." The court also held that "there is a strong presumption that a delay [in bringing a 523(a)(3)(B) action] is reasonable for purposes of laches," and "[a] party asserting laches as a defense to a complaint filed under § 523(a)(3)(B) must make a heightened showing of extraordinary circumstances and set forth a compelling reason why the action should be barred."[21]

### 2.    Availability of laches in a debtor's dischargeability action

Here, as in *Beaty*, there is no express deadline for an action to determine a debt's dischargeability, and by rule the action could have been brought "at any time."[22] The only material difference is that the action in *Beaty* was brought by the creditor, and here it is brought by the debtor, Stein.

Stein makes several arguments against application of laches to bar a debtor's dischargeability action: (1) the bankruptcy discharge operates as an

---

[20] 306 F.3d 914, 922 (9th Cir. 2002).
[21] *Beaty*, 306 F.3d at 926.
[22] Fed. R. Bankr. P. 4007(b).

injunction and a nonwaivable defense; (2) whether a debt is dischargeable can be unclear; and (3) application of laches to a debtor's action to enforce the discharge injunction would deprive her of the benefit of the discharge without any determination that it is nondischargeable.[23] Although *Beaty* didn't address those questions (it was an appeal from an action brought by a creditor), neither did it suggest that its holding applies only to laches asserted by a creditor. And she has cited no case holding that laches does not apply to a creditor's dischargeability action. Her arguments, if accepted, would make laches categorically unavailable in a creditor's nondischargeability action, and they are thus inconsistent with *Beaty*.

Although laches is potentially available under *Beaty* as a defense in an action by a bankruptcy debtor seeking a determination that a debt was discharged, that case also requires that a creditor asserting laches make a particularized showing of demonstrable prejudicial delay and a heightened showing of extraordinary circumstances and a compelling reason why the action should be barred.

### 3.    Delay; lack of diligence

Under *Beaty*, determining whether a plaintiff has failed to act diligently requires an examination of both the length of the delay between the plaintiff learning of a basis for a nondischargeability action and bringing that action, on one hand, and of the circumstances surrounding that delay,

---

[23] ECF No. 30 at 2.

including [the plaintiff's behavior during the interim period, on the other hand.[24]

Stein's discharge was entered on October 28, 2014.[25] She alleges that National Collegiate Student Loan Trust 2006-2 sued her on May 15, 2015.[26] She does not allege when National Collegiate Student Loan Trust 2007-3 sued her, but she provides the case numbers for both actions, and both begin with 15,[27] indicating that they were filed in 2015. There is no evidence that she learned of the creditors' positions that the loans were not discharged until she was served with their state-court complaints in 2015. Stein moved to reopen her bankruptcy case, thereby beginning the process of seeking a determination of the debts' dischargeability, on April 15, 2022.[28] So, more than six years passed after she learned that there was a dispute about the dischargeability of the loans and before she filed this action.

Stein does not satisfactorily explain her six-year delay. Her declaration says that she "did not have independent information or knowledge regarding the dischargeability of these loans and how the Bankruptcy Code may or may not have limited their dischargeability in a bankruptcy."[29] But she offers no legal support for the proposition that a would-be litigant's ignorance of the

---

[24] *Beaty*, 306 F.3d at 927.
[25] No. 09-66587 ECF No. 55.
[26] ECF No. 20 at 3 ¶ 12.
[27] ECF No. 20 at 3:10–20 ¶¶ 12–13.
[28] No. 09-66587 ECF No. 58.
[29] ECF No. 32 at 2.

Page 9 – MEMORANDUM DECISION ON MOTIONS FOR SUMMARY etc.

law makes her delay less unreasonable. The requirement of diligence entails making reasonable efforts to inform oneself about one's rights.

Stein also says in her declaration that she "did not have or receive any additional, independent knowledge or information regarding TERI" when she obtained the loans. The significance of this statement about TERI's involvement appears to be that the creditors now take the position that TERI's involvement makes the loan nondischargeable. She reasons that because she didn't know what TERI was, she couldn't have anticipated that its involvement would create any doubt about the dischargeability of the debt. But she unequivocally knew that the creditors considered the loans nondischargeable when they sued her in 2015. Even if she had no idea why the creditors took that position, she certainly knew that they did, and she does not explain why she nevertheless waited another six years to seek relief.

I conclude that the evidence in the summary-judgment record shows beyond dispute that the more-than-six-year delay from service of the state-court complaints in 2015 to filing this action in 2022 was unreasonable.

By contrast, I have no evidence that Stein's delay before service of the complaints was unreasonable. Although she could have initiated an action to determine the dischargeability of the creditors' claims at any time after she filed her petition in 2009, the same could be said of the creditors. And to say that she, rather than the creditors, is at fault for not having brought the action sooner suggests that all education-related debts are presumptively

nondischargeable and that any delay in bringing a dischargeability action is per se chargeable to the debtor, rather than the creditor. That approach would require prejudging whether a particular loan satisfies one of the particular 523(a)(8) nondischargeability grounds. There are good reasons, of which cost is the most obvious, that a debtor would prefer to wait and see what the creditor does before seeking a dischargeability ruling. So, it was not undisputedly unreasonable for her to wait until she became aware of the creditors' intent to collect before she filed this action.

Having determined that it was reasonable for Stein to wait to commence this action until she had been served with the creditors' complaints in 2015, but not thereafter, I turn to whether that delay prejudiced the creditors.

### 4.    Prejudice

Although laches requires showing both unreasonable delay and prejudice, *Beaty* teaches that laches "is primarily concerned with prejudice," rather than timing.[30]

Here, the creditors argue that they have suffered prejudice in two ways, which they describe as evidentiary and "expectations-based."[31]

### (a)    *Evidentiary prejudice*

The creditors' only argument for evidentiary prejudice is that—

---

[30] *Beaty*, 306 F.3d at 924.
[31] ECF No. 21 at 6, citing Danjaq LLC v. Sony Corp., 263 F.3d 942, 955 (9th Cir. 2001).

Page 11 – MEMORANDUM DECISION ON MOTIONS FOR SUMMARY etc.

> it has been more than six years since Creditors filed the
> collection actions . . .. The multiple transfers of files needed to
> assemble the information, including copying copies of scans of
> documents, necessarily degrades the picture quality of the
> evidence.[32]

The creditors do not support this argument by pointing to any examples of documents whose visibility has degraded to the point of being unusable as evidence. They thus fail to comply with *Beaty*'s requirement to demonstrate prejudicial delay by a "particularized showing."

In the creditors' reply brief, they introduce a new evidentiary-prejudice argument: satisfying their burden of proving that each of the loans is a "qualified education loan" 523(a)(8)(B) has become more difficult with the passage of time, because "obtaining and reconstructing this evidence necessarily becomes progressively more difficult, if even possible, as more time passes."[33]

As with the image-quality argument, this new evidence-reconstruction argument is too general to support laches. The creditors have not pointed to any evidence that they have had difficulty obtaining due to the passage of time. Of course, it's true that documents from old transactions typically become harder to track down as time passes. But if that general proposition sufficed to establish laches, then laches would bar every complaint filed after any significant delay. That would be inconsistent with *Beaty*'s requirement

---

[32] ECF No. 21 at 6.
[33] ECF No. 35 at 4.

that the reasonableness of delay "must in every case depend on the peculiar equitable circumstances of that case."[34]

The creditors have not demonstrated that they have suffered evidentiary prejudice.

### (b)    *Expectations-based prejudice*

Concerning "expectations" prejudice, the creditors say that they "expended tangible financial costs to procure the judgments in the collection actions."[35] The specific expenditures that they identify in their motion are costs of $502 that each incurred "to obtain" their state-court judgments (they concede that the 2006-2 trust recovered its $502 by judgment collection).[36] The judgment copies that the creditors attached to their motion as Exhibits A and B recite that each includes "total costs and disbursements based upon ORS 20.115 (4) in the sum of $502.00 . . .."[37] Oregon Revised Statutes (ORS) §20.115(4) permits recovery in a circuit court action of "any reasonable costs of service if the party has a contract right to recover those costs." Because the judgments' specific reference to the statute allowing recovery of service costs is consistent with the creditors' allegation that the costs were incurred to

---

[34] *Beaty*, 306 F.3d at 927, quoting Goodman v. McDonnell Douglas, 606 F.2d 800, 805–06 (8th Cir. 1979), quoting The Key City, 81 U.S. (14 Wall.) 653, 660, 20 L.Ed. 896 (1871).
[35] ECF No. 83 at 6.
[36] ECF No. 22 at 4 ¶¶ 16, 17; ECF No. 31 at 2–3 ¶¶ 16, 17.
[37] ECF No. 21 at 6, Ex. A at 1:16–18, Ex. B at 1:16–18.

Page 13 – MEMORANDUM DECISION ON MOTIONS FOR SUMMARY etc.

"obtain" judgment, I will treat the creditors as alleging that the $502 cost that each incurred was for the cost of service.

Whether a cost that a defendant incurs constitutes expectations-based prejudice warranting laches turns on whether the defendant would have avoided the cost had the plaintiff brought the action without unreasonable delay. Here, Stein did not learn of the creditors' position that their loans were not discharged until she was served with their state-court complaints. But even if she had brought this action, or counterclaimed in the state-court actions, immediately after being served with each creditor's complaint, the creditors would already have incurred the service costs. In other words, her delay, after she was served, in bringing this action could not have caused the creditors to incur the service costs.

In addition to the quantified $502 expenditure that each creditor incurred, they also argue that they have suffered expectations-based prejudice by (1) spending time pursuing collection of these loans, which would have been spent on other loans had these loans earlier been determined to be discharged, and (2) incurring legal fees to defend this action.[38] They don't quantify their collection effort and thus haven't made a "particularized showing" of prejudice from that effort. More importantly, they don't demonstrate a causal relationship between Stein's delay and their collection efforts. If their collection efforts were made relatively soon after judgment in

---

[38] ECF No. 21 at 7.

early 2016, then her delay causing those efforts to have been incurred would have been correspondingly shorter, not six years; there is no basis in this record to determine whether the actual delay was unreasonable. And the creditors do not explain why the expense they have spent defending this action would have been reduced had she brought this action sooner, so her delay had no causal connection to that prejudice.

The creditors have not demonstrated that they suffered expectations-based prejudice.

\* \* \*

Because the creditors have not demonstrated that Stein's delay in bringing this action caused them either evidentiary or expectations-based prejudice, I cannot grant the creditors summary judgment that laches bars this action.

## B.    *Creditors' acquisition of the loans*

Stein objects to admission of a statement by declarant Bradley Luke that the loans were sold by the originators and ultimately acquired by "National Collegiate Student Loan Trust."[39] But she accepted the creditors' allegations that each of the loan originators—Charter One and Bank of America—was a "predecessor in interest" of the corresponding trust.[40] She

---

[39] ECF No. 29 at 2:7–9, citing ECF No. 21 Ex. D at 5 ¶ 17, Ex. D-7 at 5.
[40] ECF No. 22 at 2 ¶¶ 1, 3; ECF No. 31 at 1–2 ¶¶ 1, 3.

Page 15 – MEMORANDUM DECISION ON MOTIONS FOR SUMMARY etc.

has thus conceded that those banks originated the loans and that the trusts are the current loanholders.

Stein also objects to admission of statements that the loans' servicing rights were transferred,[41] Luke's employer was engaged as subservicer,[42] and a new trustee was appointed for the creditors.[43] But her arguments in support of her motion and against the creditors' motion do not rely on, or even refer to, the absence of evidence on those points.

### C. Nondischargeability under 523(a)(8)(A)(i)

In the creditors' motion, they argue that the loans are excepted from discharge under 523(a)(8)(A)(i), which creates a discharge exception for "an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution[.]"[44] The creditors do not argue that the loans were made, insured, or guaranteed by a governmental unit or made under a program funded by a governmental unit.

Although one phrase in Stein's supporting memorandum disputes whether the creditors can demonstrate that each of her loans was "an educational loan . . . of the kind described in section 523(a)(8),"[45] she offers no specific reasons why the loans should not be considered to be educational

---

[41] ECF No. 29 at 2:9–10, citing ECF No. 21 Ex. D at 2 ¶ 4, Ex. D-1.
[42] ECF No. 29 at 2:10–12, citing ECF No. 21 Ex. D at 2 ¶ 4, Ex. D-1.
[43] ECF No. 29 at 2: 11–13, citing ECF No. 21 Ex. D at 2 ¶ 4, Ex. D-7.
[44] ECF No. 21 at 7.
[45] ECF No. 18 at 4:16–20.

loans under 523(a)(8)(A)(i).[46] Her specific argument about loan
characterization is limited to whether each of the loans is covered by
523(a)(8)(B) as a "qualified education loan."[47] I will address that question in
part III.D below.

The disputed issue under 523(a)(8)(A)(i), then, is just whether the
loans were made under programs funded in whole or in party by a nonprofit
institution.

### 1. Whether Stein admitted that TERI guaranteed the loan programs

Paragraph 21 of the creditors' concise statement is two sentences. The
first is: "The loan programs pursuant to which the Loans were issued were
guaranteed by The Education Resources Institute ('TERI'), a non-profit
institution." The second sentence is several citations, including quotations
from excerpts from the two credit agreements.

At first blush, because paragraph 21 of Stein's response to the
creditors' fact statement says simply "Accepted,"[48] she appears to have
unqualifiedly accepted their allegation that TERI guaranteed the loans. And
the creditors so argue in their reply.[49] But for two reasons, I conclude that
she meant that her paragraph 22 be her response to the creditors'
paragraph 21. First, the two sentences in her paragraph 22 appear

---

[46] ECF No. 22 at 4 ¶ 19; ECF No. 31 at 3 ¶ 19.
[47] ECF No. 18 at 7:24 – 9:8.
[48] ECF No. 31 at 3 ¶ 21.
[49] ECF No. 35 at 5.

responsive to the creditors' paragraph 21, rather than to their paragraph 22. Second, her inclusion of a paragraph 25 in her response when no paragraph 25 appears in the creditors' fact statement is consistent with her having accidentally included an additional "Accepted" paragraph as paragraph 21; if her paragraph 21 were omitted and the remaining paragraphs renumbered, her paragraph 21 (current paragraph 22) would logically respond to the creditors' paragraph 21, and there would be no superfluous paragraph 25.

Even treating Stein's paragraph 22 as responsive the creditors' paragraph 21, it's not clear whether she accepts or denies their allegation that "the loan programs were guaranteed by [TERI], a nonprofit institution."[50] Her paragraph 22 consists of two sentences. The first accepts the creditors' paragraph 21 "insofar that" the two credit agreements refer to TERI as either guaranteeing the loans or funding the loan programs. In the second sentence, she "denies, however, having any additional, independent knowledge or information" about TERI's role vis-à-vis the loans and whether the loans and loan programs "were in fact guaranteed, fully funded, or partially funded by TERI." The second sentence's denial addresses only her lack of knowledge, other than by having read the credit agreements, of TERI's role as guarantor or funder. She neither specifically denies the creditors' allegation that TERI in fact guaranteed the loans nor generally

denies the balance of the creditors' paragraph 21. On the other hand, in her opposition to the creditors' motion, filed on the same day as her response to the creditors' fact statement, she disputes whether the creditors' motion demonstrates that TERI guaranteed the loans.[51]

Through November 30, 2022, Local Bankruptcy Rule (LBR) 7056-1 governed summary-judgment motions in this district and thus governed these motions. Under that rule, a summary-judgment movant's fact allegations "may be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." For three reasons, I will exercise my discretion not to deem her to have admitted the creditors' statement that TERI guaranteed the loans: (1) her response is unclear, (2) she separately and simultaneously contests whether the creditors have demonstrated that TERI guaranteed the loans, and (3) the local rule uses "may," rather than "must."

### 2.  Creditors' evidence that TERI guaranteed the loan programs

As support for the creditors' allegation that TERI guaranteed the loan programs, they cite in the second sentence of paragraph 21 of their fact statement paragraphs 11 and 12 of Luke's declaration and the credit agreements.[52] Those paragraphs identify and refer to attached copies of the credit agreements.

---

[51] ECF No. 30 at 5:10 – 7:14.
[52] ECF No. 22 at 5 ¶ 21; ECF No. 21 Ex. D at 5–6 ¶¶ 11–12.

Both credit agreements are voiced as the borrower speaking to the lender. The loan 1 agreement says, "I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ('TERI'), a non-profit institution."[53] The loan 2 agreement includes the following statement, a portion of which is quoted in the second sentence of paragraph 21:

> I acknowledge that . . . either or both of the following apply:
> (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code.[54]

In the creditors' motion, as other evidence that TERI guaranteed the loan programs under which the loans were issued, the creditors cite documents attached to Securities and Exchange Commission Forms 8-K.[55]

In Stein opposition to the creditors' motion, she challenges the sufficiency of the creditors' evidence that TERI guaranteed or was even "involved with" the loans or the originators' programs under which the loans were made.[56]

### (a) Credit-agreement acknowledgments

Although I read Stein's response to paragraph 21 of the creditors' fact statement not to accept that TERI guaranteed the loans, I also read her

---

[53] ECF No. 21 at 3 ¶ 11, Ex. D-2 at 3 ¶ L.12.
[54] ECF No. 21 at 3–4 ¶ 12, Ex. D-3 at 5 ¶ L.12.
[55] ECF No. 21 at 12.
[56] ECF No. 30 at 5:12–16.

response to accept that the credit agreements include the language the creditors quote.

In the loan 1 agreement, Stein acknowledged that TERI guaranteed that loan. By citing that acknowledgment, the creditors rely on her as their affirmative witness for the fact of the loan 1 guaranty. But, as her lawyer argued orally, under Federal Rule of Evidence 602, "a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The creditors point to no evidence, other than her signing of the loan 1 agreement, that she had personal knowledge of whether TERI did, in fact, guarantee that loan when she signed the agreement. Although Federal Rule of Civil Procedure 56(c)(2) requires only that a movant prove the existence of evidence that could be presented in admissible form, rather than produce evidence that itself is admissible, the creditors here point to no reason why they could, at trial, offer admissible evidence that Stein knew that TERI guaranteed loan 1. And due to the "both or either" language in the loan 2 agreement, that agreement doesn't even act as her unqualified acknowledgment that TERI funded the loan program under which loan 2 was issued.

Thus, the credit-agreement language the creditors quote does not establish that TERI guaranteed the loan programs or the loans.

## (b)    Luke's declaration statement

Separately from Luke's reliance on the credit-agreement acknowledgments, he states in paragraph 16 of his declaration that TERI guaranteed both loan programs and both loans. But following that paragraph are citations to the credit-agreement acknowledgments described in part III.C.2(a) above,[57] and he doesn't refer to any other basis for having personal knowledge of the guaranties. Just as Evidence Rule 602 bars admission of Stein's acknowledgments for lack of evidence that she had a basis to know whether TERI guaranteed the loan programs or loans, the rule also bars admission of Luke's statement to that effect for lack of evidence, other than the acknowledgments, that he had a basis to know the acknowledgments to be true.

Even if Luke's statement that TERI guaranteed the loan programs and loans were admissible, it would not entitle the creditors to summary judgment. For the party with the burden of proof at trial to prevail on a summary-judgment motion, the party must "come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[58] In an action to determine dischargeability under 523(a)(8), the creditor has the burden of proof at trial on all elements other

---

[57] ECF No. 22 Ex. D at 5 ¶ 16.
[58] C.A.R. Transp. Brokerage Co., Inv. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted).

than undue hardship.[59] A directed verdict in favor of the party with the burden of proof at trial is possible only if the movant "has established his case by testimony that the jury is not at liberty to disbelieve."[60] If Luke's oral trial testimony is the same as his declaration and has the same foundation, the trier of fact will be at liberty to disbelieve him, even absent contrary evidence. Accordingly, his declaration statement is insufficient to establish the absence of a genuine dispute and entitle the creditors to a determination that TERI guaranteed the loan programs or the loans.

### (c)    8-Ks

In addition to the acknowledgments in the credit agreements, the creditors' motion identifies as evidence of the TERI guaranties "the Trust Agreement, and the dozens of references to TERI guaranties throughout the Form 8-K."[61] Exhibits E-1 and E-2 attached to the creditors' motion are copies of 8-Ks filed with respect to the trusts as registrants. The creditors' motion identifies the location of "the Trust Agreement" as Exhibit E-1 at page 175 and Exhibit E-2 at page 197.[62] In Exhibit E-1, a trust agreement for the 2006-2 trust begins on page 172, and in Exhibit E-2, a trust agreement for the 2007-3 trust begins on page 193. Each agreement is among

---

[59] Naranjo v. Educational Credit Management, Corporation (*In re* Naranjo), 261 B.R. 248, 254 (Bankr. E.D. Cal. 2001).

[60] Serv. Auto Supply Co. of Puerto Rico v. Harte & Co., 533 F.2d 23, 24–25 (1st Cir. 1976), cited with approval in United California Bank v. THC Fin. Corp., 557 F.2d 1351, 1356 (9th Cir. 1977).

[61] ECF No. 21 at 12.

[62] ECF No. 21 at 10 n.1.

Wilmington Trust Company as owner trustee, on one hand, and The National Collegiate Funding LLC and TERI, as owners of beneficial interests in the trusts, on the other.

The 2006-2 trust agreement refers to TERI's guaranty dated May 15, 2002, for loans originated under Charter One's CFS Direct to Consumer Loan Program,[63] which is the name of the loan program under which the creditors argue in their motion that loan 1 was issued.[64] The 2007-3 trust agreement makes no reference to a TERI guaranty dated June 20, 2002, which is the date of the guaranty under which the creditors argue that loan 2 was made (but that trust agreement does refer to a guaranty dated June 30, 2003[65]).

The creditors do not point to any papers in the record that constitute or include the TERI guaranties or even specimens of them. Under Civil Rule 56(c)(3), in ruling on summary judgment, the court need only consider "cited materials"; it may, but need not, consider other record materials. I decline to exercise my discretion to consider the remaining 634 8-K pages.

References in the trust agreements to TERI guaranties are factual declarations of the trust agreement parties that the guaranties exist. Because those declarations are offered for the truth of the existence of the matter asserted, they are hearsay, and the creditors point to no applicable hearsay exception.

---

[63] ECF No. 21 Ex. E-1 at 224.
[64] ECF No. 21 at 12.
[65] ECF No. 21 Ex. E-2 at 217.

### 3.      Loan-program guaranty as funding

Although my inability to determine on summary judgment that TERI guaranteed the loan programs or loans prevents me from determining that the loans are nondischargeable under 523(a)(8)(i), I can grant summary judgment on part of a claim, so I will address whether a loan guaranty, if proved, could constitute loan-program funding of the program under which the loan was issued.

Stein argues that a guaranty cannot constitute funding. In her brief in support of her motion, she advocates a dictionary-based reading of "funded" in 523(a)(8)(A)(i) that would except from discharge only loans that were "partially or fully 'paid,' or had their 'funding satisfied' by a . . . nonprofit . . .." She argues that there is no evidence that the loans were ever "paid or satisfied" by a nonprofit.[66]

Case law, including from two circuit courts of appeals outside the Ninth Circuit, supports treating a loan guaranty as funding under 523(a)(8)(A)(i). In the Sixth Circuit's 1992 decision in *Andrews University v. Merchant (In re Merchant)*,[67] the court held that a nonprofit university funded a loan by agreeing to buy the loan on default, even though the university did not otherwise fund the loan.

---

[66] ECF No. 18 at 5:24 – 6:9.
[67] 958 F.2d 738 (6th Cir. 1992).

In the Second Circuit's 2005 decision in *In re O'Brien*,[68] the court held that a guaranty constitutes 523(a)(8)(A)(i) funding without regard to any actual payment by the guarantor. The underlying bankruptcy court decision[69] discussed and rejected an argument that Stein raises here based on the difference between the wording of the first and second clauses of 523(a)(8)(A)(i). In doing so, the bankruptcy judge relied on the 1997 decision of another Southern District of New York bankruptcy judge in *Adam H. Klein v. The Education Resources Institute (In re Klein)*.[70] The first clause of 523(a)(2)(A)(i) addresses a loan "made, insured, or guaranteed by a governmental unit," and the second addresses a loan "made under any program funded" by a governmental unit or nonprofit. The *O'Brien* debtor argued, as does Stein here, that the presence of "guaranteed" in the first clause but not in the second means that Congress meant "funded" to exclude "guaranteed." The *Klein* bankruptcy judge explained that the two clauses serve different purposes. The first clause deals with specific loans guaranteed by governmental units, and the second "has a broader and different focus since it encompasses governmental units and nonprofit institutions and focuses on loan programs and not on particular loans."[71]

---

[68] 419 F.3d 104, 107 (2d Cir. 2005).

[69] O'Brien v. First Marblehead Education Resources, Inc. (*In re* O'Brien), 299 B.R. 725 (Bankr. S.D.N.Y. 2003).

[70] Ch. 11 Case No. 92-B-44249, Adv. No. 96-8828A (Bankr. S.D.N.Y. Apr. 29, 1997).

[71] *Klein* at 8–9; *O'Brien*, 299 B.R. at 730.

In the Eighth Circuit Bankruptcy Appellate Panel's 2018 decision in *In re Page*, the court recognized other decisions interpreting *O'Brien* to hold that a loan program is "funded" by a nonprofit under 523(a)(8)(A)(i) if "the nonprofit entity played any meaningful part in procurement of the loans under the program."[72]

In Stein's opposition to the creditors' motion, she cites the 2021 decision of a Southern District of California district judge in *Medina v. National Collegiate Student Loan Trust 2006-3 (In re Medina)*,[73] considering an appeal from a bankruptcy court. The district judge held that TERI's loan guaranty constituted funding under 523(a)(8) because "[w]ithout TERI's guaranty to purchase defaulted loans from the program, the loans would not have been made." The language that Stein quotes from *Medina* about a guaranty being "critical" to a loan program's funding was the district judge quoting from the bankruptcy judge's decision. The sentence about a guaranty being "critical" to funding appears in the bankruptcy decision under the heading "conclusions of law" and is followed not by any reference to evidence but instead to other court decisions.[74] The district judge did not address whether a guarantor "funds" a loan only if the lender would not have made

---

[72] 592 B.R. 334, 336–37 (8th Cir. B.A.P. 2018).
[73] 2021 WL 1541645, at *5 (Bankr. S.D. Cal. Apr. 20, 2021); ECF No. 30 at 8:1–4; ECF No. 33 at 7:27 – 8:3.
[74] Medina v. Nat'l Collegiate Student Loan Tr. 2006-3 (*In re* Medina), No. 320CV01912BENMDD, 2020 WL 5553451, at *4 (Bankr. S.D. Cal. Sep. 10, 2020).

Page 27 – MEMORANDUM DECISION ON MOTIONS FOR SUMMARY etc.

the loan absent the guaranty. The district judge did agree with other cited cases stating that, as a matter of law, a loan guaranty should be treated as 523(a)(8)(A)(i) funding.

Stein has cited no decision of the Ninth Circuit or other circuits holding that a nonprofit's guaranty, without evidence of payment, does not constitute 523(a)(8)(A)(i) funding. A Ninth Circuit decision adopting *Stein*'s position would create a circuit split with the decisions of the Second Circuit in *O'Brien* and the Sixth Circuit in *Merchant*. The Ninth Circuit "will not create a direct conflict with other circuits . . . absent a strong reason to do so." [75] Because I see no strong reason why the Ninth Circuit would disagree with the Second and Sixth Circuits, I decline to do so.

I will grant the creditors' motion in part, concluding that a nonprofit's loan guaranty constitutes 523(a)(8)(A)(i) funding of the program under which guaranteed loans are made. I will otherwise deny both Stein's and the creditors' motions on 523(a)(8)(i).

### D.    *Nondischargeability under 523(a)(8)(B)*

Stein contends in her supporting brief that her loans are not "qualified education loans," and thus they are dischargeable under 523(a)(8)(B), because the loan amounts "greatly exceed the cost of attendance at both" the schools she attended.[76] The creditors have not moved on 523(a)(8)(B).

---

[75] United States v. Chavez-Vernaza, 844 F.2d 1368, 1374 (9th Cir. 1987).
[76] ECF No. 18 at 8:15–17.

A debt is nondischargeable under 523(a)(8)(B) if, among other things, it is "a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986 [title 26, U.S. Code], incurred by a debtor who is an individual." Section 221(d)(1) of title 26 defines "qualified education loan" as indebtedness incurred "solely to pay qualified higher education expenses," which are defined in 221(d)(2) to include the "cost of attendance" as defined in the version of 20 U.S.C. § 1087*ll*. Section 1087*ll* defines "cost of attendance" to include, in addition to tuition and fees, defined allowances for books, supplies, transportation, and miscellaneous personal expenses[77] and an allowance for room and board costs.[78]

The creditors cite the 2020 decision of an Eastern District of Michigan district judge in *Conti v. Arrowood Indemnity Co*,[79] considering an appeal from a bankruptcy court. The debtor argued that her student loans were not for "qualified higher education expense" because she was permitted to, and did, use a portion of the proceeds for personal expenses. Rejecting the debtor's argument, the district judge held that whether a loan is for "qualified higher education expenses" turns on "the purpose of the loan, rather than how the debtor actually spent the loan proceeds." To permit a borrower to use student loans for social uses and thus obtain the benefits of discharge while students who properly use their loans would retain the burden of paying them would

---

[77] 20 U.S.C. § 1087*ll*(2).
[78] 20 U.S.C. § 1087*ll*(3).
[79] 612 B.R. 877, 881 (E.D. Mich. 2020); ECF No. 28 at 10.

be "an absurd result." The loan applications stated that the loans were predicated on the debtor's status as a student and demonstrated that the lender intended the loans to be for an educational purpose, from which the district judge concluded that the loans were qualified education loans.[80]

Here, Stein cites no case disagreeing with *Conti*, and she accepts the creditors' fact statements that (1) the loans were obtained for an educational purpose,[81] (2) both Credit Agreements identified the loans as educational loans for specified academic periods when she attended CCC and WOU,[82] and (3) on the note disclosure statements for both loans she is identified as "student."[83] Thus, as in *Conti*, the originating lenders here intended the loans to be for educational purposes, so the loans constitute qualified education loans under 523(a)(2)(B) without regard to how she used the proceeds.

Even if Stein were correct as a matter of law that whether a loan is a "qualified education loan" turns on how the borrower spends the loan proceeds, she has not demonstrated, through information that I may consider, that the loan amounts exceeded the cost of attendance. She argues in her opening brief that the $14,000 Charter One loan for (now held by the 2006-2 trust) "greatly exceeded" the cost of attendance at CCC for April through June 2006 and the Bank of America $25,000 loan (now held by the

---

[80] 612 B.R. at 882.
[81] ECF No. 22 at 4 ¶ 18; ECF No. 31 at 3 ¶ 18.
[82] ECF No. 22 at 4 ¶ 19; ECF No. 31 at 3 ¶ 19.
[83] ECF No. 22 at 4 ¶ 20; ECF No. 31 at 3 ¶ 20.

2007-3 trust) "greatly exceeded" the cost of attending WOU for July 2007 through May 2008. But in that brief and in her statement of facts[84] she does not allege the cost of attendance at CCC, and she alleges that tuition and fees for WOU attendance were no more than $5,982, but she does not mention the other components of cost of attendance there, including books, supplies, transportation, miscellaneous personal expenses, and room and board costs. She thus does not provide with her motion evidence of the actual costs of attendance to which the loan amounts could be compared.

After the creditors had responded to Stein's motion, she filed a supplemental declaration[85] with her reply[86] to augment her evidence on the cost of attendance. But her supplemental declaration was impermissible under LBR 7056-1(b)(3). That rule permitted a summary-judgment movant to reply to the opponent's facts but only under LBR 7056-1(b)(1), which permits the movant to accept or deny facts but does not permit the introduction of additional facts. LBR 7056-1(b)(2), which permits the opponent to introduce new facts in opposition to a motion, applies only to the opposition and not also to the movant's reply. That scheme is consistent with Civil Rule 56(a)'s allocation to the summary-judgment movant of the burden of demonstrating the absence of a genuine dispute as to any material fact. It's also consistent

---

[84] ECF No. 17.
[85] ECF No. 34.
[86] ECF No. 33.

with giving the opponent an opportunity to offer its own evidence in contradiction of the movant's.

I will deny Stein summary judgment that the loans are dischargeable under 523(a)(2)(B).

## IV.     Conclusion

In both this action and the main case, I will grant the creditors' motions in part by concluding that a nonprofit institution's guaranty of loans issued under a loan program constitutes funding of the program under 523(a)(8)(A)(i). I will otherwise deny Stein's and the creditors' motions in both this action and the main case.

# # #